## Dollar Savings Bank *versus* Bennett.

1. A mere naked verbal agreement by a purchaser at sheriff's sale with his own money, that he will hold the premises in trust for the defendant, neither vests any estate in the defendant under the statute prohibiting parol declarations of trust, so that he has any claim to the money under the common count, nor being *nudum pactum*, gives any ground for an action.

2. The plaintiff alleged that, owing a bank a debt secured by mortgage, the bank agreed with him to sell the land at sheriff's sale, under the bond secured by the mortgage, and purchase it, and then sell as much as would pay the debt, repay him any surplus and reconvey to him any unsold land; the bank so bought and sold part for more than enough to pay the debt, and did not give him the surplus or reconvey the residue of the land. In an action of assumpsit to recover the surplus money and the value of the land sold, the court charged that if the jury found, that if it was understood by the parties that the sheriff's sale was to be merely a process of increasing the security of the bank, or to enable plaintiff through the bank to make title to the land, or to enable the bank to sell part and pay the debt; or if it was the understanding the debt should survive the sheriff's sale, the sheriff's deed was only a mortgage and plaintiff might recover. *Held* to be error, no consideration for the alleged promise being adverted to in the instructions.

3. The mortgagee had a right to proceed on the bond and become purchaser at the sale if he was the highest and best bidder.

4. Boynton *v.* Housler, 23 P. F. Smith 458; Danzeisen's Appeal, Id. 65; Sweetzer's Appeal, 21 Id. 264, distinguished.

[Dollar Savings Bank *v.* Bennett.]

October 7th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Allegheny county* : No. 146, to October and November Term 1873.

This was an action of assumpsit, brought July 30th 1872, by John F. Bennett against The Dollar Savings Bank.

The declaration, in the first count, set out that the plaintiff was indebted to the defendant in $16,000, with interest at 8 per cent. per annum, for which the defendant held a judgment-bond, dated January 29th 1864, and secured by mortgage of the same date on lands and coal property owned by the plaintiff in Allegheny county, worth $230,000; that it was agreed between the plaintiff and defendant that the defendant should issue execution on the judgment entered on the bond, and procure the lands, &c., to be sold by the sheriff, and that the defendant should purchase the lands at the sale for their actual and reasonable value, and in consideration thereof the defendant agreed that the plaintiff should have the privilege of redeeming the lands upon paying, within a reasonable time, the debt and interest, and the expenses, &c., incurred by the defendant; that if the plaintiff should not redeem the lands, &c., within a reasonable time, then a sufficient part to pay the debt, interest, costs, &c., should be sold by the defendant, with the consent of the plaintiff, or by the plaintiff, with the consent of the defendant; and in case of such sales, the defendant to pay over to the plaintiff, or the plaintiff to retain—as the case might be—any surplus, after payment of the debt, interest, costs, expenses, &c., and the defendant to reconvey to the plaintiff any part of the land remaining unsold; that, in pursuance of the agreement, the defendant procured the land to be sold by the sheriff, and, the plaintiff not interfering, the defendant purchased all the lands, &c., at the sale, at the nominal sum of $5300, their actual value being $238,000; that after the sale the plaintiff, in pursuance of the agreement, retained the possession, paid the taxes and made valuable improvements; that afterwards the defendant, without the consent of the plaintiff, conveyed all the coal underlying the lands and other coal mentioned in the mortgage, for $47,050, a sum far below its market value, which was $110,000. The declaration charged that, by reason of these facts and of the agreement, the defendant was liable to pay to plaintiff $85,000, being the difference between the debt, interest, costs, expenses, &c., and the sum of $110,000, which was the market value of the land as aforesaid.

The second count averred that the defendant, in violation of the agreement, and without the consent of the plaintiff, conveyed the whole of the remainder of the lands, &c., purchased by the defendant to trustees for the defendant and others, not the plaintiff, for the nominal consideration of one dollar, the lands being of the

value of $128,000; and that, by reason thereof, the defendant became liable to pay the plaintiff " the actual and reasonable value of said lands, to wit, the sum of $128,000."

There was also a count for $213,000, money had and received by the defendant for use of the plaintiff.

The cause was tried May 9th 1873, before Stowe, J.

The plaintiff testified that the interest on his debt being unpaid in January 1866, and the bank having instructed their solicitor, Mr. Burgwin, to collect it, the plaintiff went to Mr. Burgwin's office to have the collection put off; Mr. Burgwin advised him to let the bank sell the property under their mortgage, the bank to obtain the title, and the plaintiff could, through the bank, make a good title to any part of the property he should sell; the bank would hold the property as security for their debt; and if in the meantime plaintiff could sell any and pay them off, they would restore the remainder, and failing in that, they should, with his consent, sell the property, pay themselves, and pay plaintiff the remainder, after taking out their debt, costs, &c. He afterwards went to the bank and saw Mr. Coulton, who was treasurer and a trustee; he was " the head man, the only man, excepting the president, the only official of any rank." Plaintiff told Mr. Coulton his conversation with Mr. Burgwin, and asked him whether the bank would agree to the conditions contemplated by Mr. Burgwin and himself. Coulton said the bank would. Coulton then stated to plaintiff many instances in which similar arrangements had been made with debtors of the bank. Persuaded by these conversations and promises, plaintiff allowed Mr. Burgwin to sell his property at sheriff's sale. It was sold for $5300. Plaintiff testified further as to acts of the bank after the sale, tending to show that the bank still recognised his ownership of the land on the terms of the agreement. He gave other evidence also, for the purpose of sustaining the allegations in his declaration.

The defendant gave evidence in answer to plaintiff's case.

The plaintiff submitted these points:—

1st. If you find from all the evidence in this case that the sheriff's sale, whereby the title to the property described in the mortgage of plaintiff to defendant, dated January 29th, A. D. 1864, was vested in defendant, was understood and intended by the parties as being merely a process for the purpose of increasing the security of the bank, or to enable the plaintiff, through the bank, to make title to any portion of the mortgaged property he might sell, or to enable the bank to sell a sufficient amount of the mortgaged premises to pay off the mortgage-debt, interest and costs; the sheriff's deeds, although absolute on their face, are, in law, merely a mortgage, and it is your duty to find for the plaintiff in this case.

2d. If you find from the evidence that it was the understanding

of the parties at the time of the sheriff's sales, that the pre-existing mortgage-debt should survive the sheriff's sales and deeds, then the sheriff's deeds are but a mortgage, and your verdict should be for the plaintiff.

The court, after reading the points, charged :—

"These two points are affirmed *pro forma*, and if you believe the evidence of the plaintiff in this case, and that the facts suggested in the points are sufficiently shown by all the testimony in the cause, you should find for the plaintiff the difference between the sum the bank was entitled to have for the debt, interest and costs, as well as such other incidental expenses as they were to be paid for, and the fair value of the coal at the time it was sold by the bank, subject to the opinion of the court upon the question of law arising under said finding of facts by the jury.

"In speaking of the parties in suit, we of course mean the plaintiff, John F. Bennett, and The Dollar Savings Bank in its corporate capacity. In respect to the latter; it is only bound by the acts of parties having a power to act for it at the time, or whose acts were subsequently accepted and acted upon by the bank.

"In this case an arrangement of the solicitor, such as alleged here, could not bind the bank, nor could that of the treasurer, without more. But if they did make the agreement alleged by plaintiff, and under it the property was sold in the manner it was, at sheriff's sale, and title vested in defendant and the bank, through the executive committee of the bank or such other officer as was allowed to control or manage its affairs at any time before the sheriff's sale, *or afterwards*, and before the sale of coal, with a knowledge of the arrangement, recognised it as an obligation the bank would carry out, the bank is bound by it.

"But the jury must be careful not to confound an understanding of plaintiff alone, arising out of his actual or supposed knowledge of what the bank had done for others under like circumstances, with an actual agreement of the bank in this particular case, to do what it is alleged by plaintiff it actually agreed to do when it obtained the title to plaintiff's land at sheriff's sale.

"If both parties did not say or do that which fairly indicated the *mutual* understanding previous to sheriff's sale, the case is not sufficiently made out by plaintiff. He must satisfy you before he can recover that it was actually agreed by the parties acting for the bank, that the property, when sold, would be held as plaintiff alleges, or that they (the parties acting for the bank), by what they did and said, fairly gave to plaintiff to understand that the bank did actually agree to do so."

The verdict, May 9th 1873, was for the plaintiff for $20,227.97, with interest from April 1st 1870.

The court, July 12th 1873, ordered judgment to be entered

on the verdict for the plaintiff, on the reserved point, for $24,000.46.

The defendant took a writ of error, and, amongst other specifications, assigned for error the affirmance of plaintiff's points and entering judgment on the verdict for the plaintiff on the reserved point.

*T. M. Marshall*, for plaintiff in error.—If a promise to purchase land for the benefit of another be broken, the measure of damages is not the price of the land or the value of the contract: Kistler's Appeal, 23 P. F. Smith 393; nor does an agreement to buy defendant's property at sheriff's sale transfer the title after the purchase to the defendant: Fox *v.* Heffner, 1 W. & S. 372; Kisler *v.* Kisler, 2 Watts 327; Barnet *v.* Dougherty, 8 Casey 371; Kellum *v.* Smith, 9 Id. 158; Robertson *v.* Robertson, 9 Watts 32; Haines *v.* O'Conner, 10 Id. 313; Jackman *v.* Ringland, 4 W. & S. 149; McNair *v.* Compton, 11 Casey 23.

*J. W. Kirker* (with whom was *Samuel Palmer*), for defendant in error.—A deed absolute on its face may be shown by parol to be merely a security for money lent: Sweetzer's Appeal, 21 P. F. Smith 265; Danzeisen's Appeal, 23 Id. 65; Harper's Appeal, 14 Id. 315; Houser *v.* Lamont, 5 Id. 311; Kunkle *v.* Wolfsberger, 6 Watts 126; Hiester *v.* Madeira, 3 W. & S. 384; Beegle *v.* Wentz, 5 P. F. Smith 369. When one having an interest in land is induced to comply with the verbal promise of another, that he will repurchase for the former at sheriff's sale, by a purchase claiming for himself, he becomes a trustee *ex maleficio*: Boynton *v.* Housler, 23 P. F. Smith 453; Maffitt *v.* Rynd, 19 Id. 380; Cook *v.* Cook, Id. 443. Such purchaser is not protected by the Act of April 22d 1856, sect. 4 Pamph. L. 533, 1 Br. Purd. 724, pl. 3; Squire's Appeal, 20 P. F. Smith 266; Seichrist's Appeal, 16 Id. 237. That the conveyance was for a pre-existing debt makes no difference: Todd *v.* Campbell, 8 Casey 250.

Mr. Justice SHARSWOOD delivered the opinion of the court, November 9th 1874.

This was an action of assumpsit. The declaration contained two special counts and the common count for money had and received. It is essential to maintain this action that the promise or undertaking of the defendant should be founded upon a sufficient legal consideration—either some benefit to the promissor or some injury to the promissee. Nothing is clearer in principle or better settled by authority than that a mere naked verbal agreement by a purchaser at a sheriff's sale, with his own money, that he will hold the premises in trust for the defendant—neither vests any equitable estate in the defendant under the statute which prohibits parol

[Dollar Savings Bank *v.* Bennett.]

declarations of trust—so that no claim to the money could exist in him under the common count—nor does it give any ground for an action, being a mere *nudum pactum*. The mortgagees had a legal right to proceed on their judgment-bond and to become the purchasers at the sale, if they were the highest and best bidders. There may have been in the special count a sufficient allegation of consideration, and there may have been evidence of it given upon the trial, which might have been left to the determination of the jury. Upon these questions we do not feel called upon to express any opinion. The learned judge below evidently did not advert to these vital points in the case in affirming, as he did without quali- fication, the first two propositions submitted to him by the plaintiff below. No consideration for the alleged promise is adverted to in either of these propositions. Sweetzer's Appeal, 21 P. F. Smith 264, is not opposed to this, for there Chief Justice Thompson states in his opinion, and it was evidently the turning-point of the case, "at the time of the sale it was made known to creditors that the property was simply being put in a shape to bring money on mort- gage to pay Sweetzer's debt. The master finds that at the sale the Jiffkins, Sherrerd and Sweetzer all represented that the sale was merely an arrangement for the benefit of Sweetzer." In Danzeisen's Appeal, 23 P. F. Smith 65, the conveyance was with- out consideration upon a parol promise by the grantee to raise money by a mortgage of the land to pay the grantor's debts, and the present Chief Justice says in the opinion : "It is very evident that the deed was a mortgage or a trust *ex maleficio* would arise; for when the deed was delivered no consideration passed. Miller procured the estate without payment of any purchase-money, and therefore stood in no better situation in point of fact than one in whose name a deed is taken by another, who pays the purchase- money." And again : "It would be different had the deed been intended to enable Miller (the grantee) to raise money by a sale, for there Danzeisen (the grantor) would intend to pass an absolute estate, and to trust the promise of Miller to apply the proceeds to his use ; a breach of such a promise would not convert Miller into a trustee, and the case in principle would resemble that of Barnet *v.* Dougherty, 8 Casey 371." In Boynton *v.* Housler *et al.*, 23 P. F. Smith 458, the purchaser on the day preceding the sale said, that "if they would not interpose or bid at the sale and have it bid off as low as possible, she (the widow of the party whose estate was sold) should have the homestead."

These cases, then, upon which the defendant in error mainly relies to support the propositions which the learned judge affirmed, do not sustain his contention. It is unnecessary to consider the other errors assigned.

Judgment reversed, and a *venire facias de novo* awarded.